955 F.2d 46
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jack VITALE, Plaintiff-Appellee,
v.
Police Officer GLYNN, Defendant-Appellant.
 No. 91-1913.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 10, 1992.
Decided Feb. 19, 1992.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Terry Glynn is a police officer in the City of Bridgeview; Jack Vitale runs a pawn shop in Bridgeview; Ronald Gonzales was a one-time patron of Vitale's pawn shop. Gonzales flagged down Glynn on a Bridgeview street one morning, complaining that Vitale had threatened him with a gun when he had tried to redeem some jewelry he had pawned to Vitale. Glynn went with Gonzales to the pawn shop to investigate the matter.
 
 
 2
 When Glynn entered Vitale's pawn shop he asked Vitale if he had pulled a gun on Gonzales. Vitale answered "I didn't pull it on him, I did pull a gun out. Yes."
 
 
 3
 Glynn then asked him, "Do you have [Gonzales's] jewelry or something?"
 
 
 4
 Vitale countered that he could not give Gonzales his jewelry if Gonzales did not have a receipt, which by all accounts is the same explanation he offered Gonzales when Gonzales first came for the jewelry earlier that morning. Glynn asked Vitale if there was any way Gonzales could get his jewelry back without a receipt. Vitale answered by explaining his version of the earlier incident to Glynn. He explained that Gonzales became belligerent when Vitale demanded a receipt before he would return Gonzales's goods. Vitale told Glynn that when Gonzales refused to leave the shop "I pulled it [the gun] out and I said, 'now hit the door, okay.' "
 
 
 5
 Gonzales interrupted, "You were comin' around the counter."
 
 
 6
 Vitale snapped, "That's right."
 
 
 7
 Glynn called the police station to see what he should do. When Glynn got off the phone he explained to Vitale that Vitale had committed aggravated assault by brandishing his gun. Glynn asked Gonzales what he wanted to do about the matter. Gonzales said he wanted to press charges so Glynn took him outside to sign a complaint. Glynn called the police station again, then arrested Vitale for aggravated assault.
 
 
 8
 The charges against Vitale eventually were dropped. Vitale responded by filing suit under 42 U.S.C. § 1983 against Glynn claiming that Glynn violated his civil rights by arresting him unlawfully. Glynn moved for summary judgment on Vitale's amended complaint on the ground that the undisputed material facts showed that Glynn had probable cause to make the arrest and therefore qualified immunity protected him from suit.
 
 
 9
 The district court denied Glynn's motion because it found that there were material issues of facts that raised questions for the jury about whether Glynn had probable cause to arrest Vitale. Specifically the court found that material issues of fact remained as to 1) whether Glynn had conducted a thorough investigation, 2) whether Glynn arrested Vitale in retaliation for Vitale's refusal to turn over the jewelry, and 3) whether the arrest was based on Glynn's reasonable exercise of judgment. Glynn now appeals the denial of his motion.
 
 
 10
 At the threshold we must address Vitale's argument that Elliot v. Thomas, 937 F.2d 338 (7th Cir.1991), requires that we dismiss this case for lack of jurisdiction. Elliot says that the collateral order doctrine of Mitchell v. Forsyth, 472 U.S. 511 (1985), does "not create a general exception to the finality doctrine for public employees[,]" thus we do not have jurisdiction to hear appeals from interlocutory orders taken for the sake of arguing " '[I] didn't do it'." Elliot, 937 F.2d at 342. Glynn, however, does not argue "I didn't do it"; he argues, rather, "I did it, but I had probable cause to do it." The district court's adverse ruling on that issue is an appealable collateral order.
 
 
 11
 Our sole question on the merits is whether Glynn had probable cause to arrest Vitale. For if Glynn had probable cause to make the arrest that "is an absolute bar to a Section 1983 claim for unlawful arrest." Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir.1989). Glynn had probable cause to arrest Vitale if, at the time the arrest was made, the facts and circumstances that Glynn knew of and that he had reasonably trustworthy information about were "sufficient to warrant a prudent person to believe that an offense was committed." Simkunas v. Tardi, 930 F.2d 1287, 1291 (7th Cir.1991).
 
 
 12
 We review de novo the denial of Glynn's motion for summary judgment. Summary judgment is appropriate only if, drawing all reasonable inferences in favor of the nonmoving party, we conclude that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hohmeier v. Leyden Community High Schools, No. 90-3373, slip op. at 4 (7th Cir. Jan. 22, 1992) (citations omitted). Glynn argues that the district court erred by finding questions of material fact, and that he is entitled to judgement as a matter of law. We agree.
 
 
 13
 The district court identified unresolved issues of fact, but they were immaterial to whether Glynn had probable cause to arrest Vitale. First, probable cause for arrest curtails further consideration into a police officer's thoroughness in investigating a matter. Schertz, 875 F.2d at 583. Second, an officer's motivation for making an arrest is not part of the probable cause inquiry; "the question is whether the officers acted in an objectively reasonable manner." Id. (citing Anderson v. Creighton, 483 U.S. 635 (1987)).
 
 
 14
 The third issue identified by the court is material, but it is not factual. Indeed, whether Glynn exercised reasonable judgment by arresting Vitale is the legal gravamen of the probable cause analysis. There are several undisputed facts that show Glynn had probable cause to arrest Vitale. Gonzales beckoned Glynn to Vitale's pawn shop because he claimed that Vitale threatened him with a gun. With this in mind, Glynn immediately asked Vitale whether he had pulled a gun on Gonzales. Vitale said that he did not pull the gun on Gonzales, but he admitted freely that he pulled the gun out while telling Gonzales to leave. This admission alone may have created probable cause for Vitale's immediate arrest. But there is even more grist for the mill of probable cause. Vitale and Gonzales demonstrated for Glynn the contentiousness that could have provoked an aggravated assault by continuing their quarrel in front of Glynn. Then, when Vitale repeated his version of the events he conceded that in addition to wielding the gun he also started to come around the counter with it.
 
 
 15
 Glynn's call to the police station informed him that Vitale's actions constituted aggravated assault. When Gonzales signed a formal complaint for arrest, Glynn had all he needed to make a lawful arrest. Qualified immunity passed to Glynn as a result of making a lawful arrest. The district court's finding that Glynn did not have probable cause to arrest Vitale is therefore REVERSED, and the case is REMANDED to the district court with instructions to enter judgement in favor of Glynn.